IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Joseph Bryan, | ) | |
| | ) | Civil Action No. 8:06-2515-GRA-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Lt. Monica Capers, | ) | |
| Unit Supervisor, Chaplain Phillip | ) | |
| Wren, and Associate Warden | ) | |
| Bruce A. Rivers, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on September 11, 2006, seeking damages for alleged civil rights violations. On February 5, 2006, the defendants filed a motion for summary judgment. On February 6, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 5, 2007, the plaintiff filed a response opposing the defendants' motion.

**FACTS PRESENTED**

The plaintiff is currently a state inmate within the South Carolina Department of Corrections ("SCDC") housed at the Coastal Pre-Release Center.   At the time of the events alleged in the complaint, the plaintiff was housed at the Ridgeland Correctional Institute ("RCI"). While housed at the RCI, the plaintiff was assigned to the Georgetown Unit for approximately two months during November and December 2005.   (Compl. at 4.)  Then on December 29, 2005, he was re-assigned to the Beaufort Unit within the RCI. (*Id.*)  The plaintiff alleges while housed in the Georgetown Unit, he was denied his right to practice his Muslim faith in a group setting. (*Id.*)  Additionally, he contends in the Beaufort Unit he does not have access to a bathroom during his religious classes and services. (*Id.* at ¶ 16.)

The plaintiff alleges violations of his right to freely exercise his religion.  He is seeking a declaratory judgment that the defendants have violated the constitution and state laws, an injunction requiring the defendants provide a clean space for religious practices, and punitive damages.  (Compl. at 6.)

**APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that

(1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary

2

judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

### Injunctive and Declaratory Relief

As noted above, the plaintiff is seeking declaratory and injunctive relief. The defendants contend the plaintiff's claims for injunctive relief are moot.   (Defs.' Mem. Supp. Summ. J. Mot.

at 2.)   The Court agrees that not only are the plaintiff's claim for injunctive relief moot, but his claims for declaratory judgment are moot as well.   The Court notes that since the filing of this action, the plaintiff has been transferred from the RCI to the Coastal Pre-Release Center.  (See Dkt. # 6.)   The plaintiff's transfer limits the relief available to him.   "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided.   If intervening factual . . . events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d 689, 694 (4th Cir.1983).   "[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."   *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  *Accord Taylors v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986) (holding that prisoner's transfer mooted request for declaratory and injunctive relief).   As the plaintiff has been transferred from the RCI, his requests for injunctive and declaratory relief are now moot.  The plaintiff's entire case, however, is not mooted  because he also seeks money damages. *Williams*, 952 F.2d at 823.

**Damages**

The defendants also argue that the plaintiff's claims for money damages are barred as a matter of law because the plaintiff prays for only punitive damages which are unavailable without a request for actual damages.   The defendants are correct that the plaintiff does not seek any actual damages or even allege any injury or harm which would support an award of actual damages and ordinarily, in such a case, a plaintiff would not be entitled to an award of punitive damages.  However, the plaintiff also seeks "[a]ny additional relief this Court deems

4

just, proper, and equitable." (Compl. at 6.)   As the plaintiff is pro se, this Court must liberally construe his complaint.   *Cruz v. Beto*, 405 U.S. 319 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978)(pro se complaint involving civil rights issues should be liberally construed). Liberally construing the plaintiff's complaint, the Court is constrained to consider whether there is other relief available to him.

Nominal damages are an appropriate means of vindicating rights where a constitutional deprivation has not caused actual, provable injury. *See , e.g., Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3d Cir.2000) (holding claims for nominal and punitive damages for violation of First Amendment free exercise of religion rights are not barred by Section 1997e(e) prohibition of recovery of emotional injury compensatory damages).   As the plaintiff does not make any allegations of physical injury or harm, the plaintiff's request for monetary damages must necessarily be limited to nominal damages.   *See Burt v. Abel*, 585 F.2d 613, 616 (4th Cir.1978).   Although the Fourth Circuit has not addressed whether nominal damages can support an award of punitive damages, other jurisdictions have held that nominal damages can, in some circumstances, support an award of punitive damages.   *See* John J. Kircher & Christine M. Wiseman, *Punitive Damages: Law & Practice* § 5:21 (2d Ed. 2007)(majority view is that nominal damages will support punitive award.)   Therefore, liberally construing the compliant, the plaintiff may be entitled to recover nominal damages if he is successful and thus he would not be barred as a matter of law from recovering punitive damages.   Accordingly, for purposes of this summary judgment motion only, the Court will assume the plaintiff may be entitled to recover punitive damages and will address the merits of the plaintiff's claims.

**Freedom to Exercise Religion Claims**

The plaintiff contends his right to exercise his religion pursuant to the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1, (RLUIPA), has been violated by the defendants.[1]  Specifically, the plaintiff alleges that his rights have been violated by the denial of daily congregational or group prayer while he was housed in the Georgetown Unit and the denial of access to a bathroom during Islamic classes and the weekly Jumu'ah services while he was housed in the Beaufort Unit.  (Compl. 3-4.)

**First Amendment**

It is well established that a prisoner retains his federal constitutional right to freedom of religion pursuant to the First Amendment, and prisoners must be afforded "reasonable" opportunity to practice their religion.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  However, even when religious freedoms are at issue, prison administrators must be afforded "latitude in the administration of prison affairs." *Id.*   As the United States Supreme Court has noted  "[i]n the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives on the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  A prison policy "alleged to infringe constitutional rights [is] judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate Shabazz*, 482 U.S. 342, 349 (1987).

---

[1]The plaintiff also alleges violations of the South Carolina Religious Freedom Act ("SCRFA") which is set forth in S.C. Code Ann. § 1-32-10 et. seq.  The undersigned recommends that the court decline to exercise jurisdiction over the plaintiff's state law claims.  (*See Infra* at p. 12.)

6

In order to make this reasonableness determination, the Court must consider four factors: (1) whether the disputed decision is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). Significantly, the burden is on the prisoner to disprove the validity of the prison regulations at issue. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Further, the Court is required to give deference to the judgment of prison administrators in First Amendment challenges. *Sweet v. S.C. Dep't of Corr.*, 529 F.2d 854, 859 (4th Cir.1975).

Here, the plaintiff has failed to show that the prison policies regarding the plaintiff's religion is not reasonably related to a legitimate penological interest under the standard of *Turner* and its progeny. SCDC's Policy No. PS-10.05 sets forth the SCDC's policy regarding the handling of inmate religious practice and includes a handbook addressing various religious groups and their practices. (Defs.' Mem. Supp. Summ. J. Mot. Attach. 4.) Generally, the SCDC policy states that religious activities of inmates may be restricted for safety and security reasons. (P.S. -10.05 §3.)

The handbook section of SCDC policy sets forth the requirements for the Muslim faith which includes five daily prayers and a weekly one-hour congregational service held on Fridays, Jumu'ah. " (PS10.02 §5.1; 7.7.) The handbook states that inmates may be allowed

to meet as group for the daily prayers "depending on space, controlled movement, and level of security, but the prayers can be made by individuals."  (PS10.02 § 7.3.)

In his affidavit, Associate Warden Anthony Burton states that the Georgetown Unit in the RCI does not have a secure space available for Muslims to conduct their daily prayers in a group.  (Defs.' mem. Supp. Summ. J.  Mot. Attach. 2 ¶ 4.)   Associate Warden Burton also states that the laundry room, which the plaintiff has suggested as an appropriate place for group daily prayer, is not secure and enables inmates to hide contraband in the walls and ceilings.  (*Id*. at ¶ 5.)  Associate Burton also states that inmates are not allowed to access to a bathroom during any services held in the chapel for security reasons.[2]  (*Id*. at ¶ 6-7.)  Inmates are aware that they will not have free access to a bathroom during the service.   (*Id*. at ¶ 8.)  If an inmate must use a bathroom during a service, the inmate will be escorted back to his dormitory and unable to return to the service.  (*Id*.)

The evidence in the record establishes that the denial of the plaintiff's request for daily group prayer and access to a bathroom during the hour long weekly group prayer are rationally related to the legitimate penological interest of security.  Additionally, the plaintiff has not alleged that he has been prevented from conducting his daily prayer individually or attending the weekly Jumu'ah service. *See Scott v. Ozmint*, 467 F.Supp.2d 564 (D.S.C. 2006)(inmate's rights were not violated where he could practice his religion individually).  Accordingly, the defendants should be granted summary judgment on the plaintiff's First Amendment claim.

---

[2]Inmates at one time were allowed access to the nearby visitor's bathrooms.  However, the bathrooms were vandalized ending the inmates access to the bathrooms.  (Defs.' mem. Supp. Summ. J.  Mot. Attach. 2.)

8

**RLUIPA**[3]

Section 3 of the RLUIPA provides, in part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a). The plaintiff has the burden to show that the government action substantially burdens his exercise of religion. 42 U.S.C. § 2000cc-2(b). *Adkins v. Kaspar*, 393 F.3d 559, 567 n. 32 (5th Cir. 2004); *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d 752, 760 (7th Cir. 2003). In "substantial burden" determinations, the religious practice does not have to be mandated by the religion in order for the burden to be found "substantial," as the text of the RLUIPA makes clear. 42 U.S.C. § 2000cc-5 (7)(A). The Fourth Circuit Court of Appeals has held that "for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006)(internal citation and quotation marks omitted). Once the plaintiff establishes a substantial burden, the government must show that

---

[3]Section 3 applies when "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance" or "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." § 2000cc-1(b)(1)-(2). The defendants argue that it is the plaintiff who has the burden of pleading and proving the applicability of the RLUIPA and he has not presented any evidence to meet this burden. Although the Court agrees with the defendants that the plaintiff has not presented any evidence to show that the RLUIPA applies, the Supreme Court seems to have foreclosed this argument at least in regard to prisons as it has stated that "[e]very State . . . accepts federal funding for its prisons." *Cutter v. Wilkinson,* 544 U.S. 709, 715-16 n. 4 (2005). Accordingly, the Court will address the merits of the plaintiff's RLUIPA claim.

its practice is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. *Adkins*, 393 F.3d at 567 n. 32.

In the present case, the plaintiff has failed to meet his initial burden of coming forward with evidence demonstrating a prima facie claim that defendants' actions constituted a substantial burden on his religious exercise. The plaintiff merely asserts that "he should make [ ] prayer in congregation" and that "[t]his is a major pillar of [his] religion." (Compl. at 3.) However, as noted above the plaintiff does not allege that he has been prevented from making his daily prayers or attending the weekly Jumu 'ah service. The evidence does not show that there has been a substantial burden placed on the plaintiff's ability to exercise his religion by defendant's actions. Instead, the denial of daily prayers and the denial of access to a bathroom during the weekly Jumu'ah service appears to have only an incidental effect on the exercise of plaintiff's religion. *Greene v. Solano County Jail*, 2006 WL 2067056, *9 (E.D.Cal. 2006) ("While the jail policy with respect to group religious services for maximum security detainees may have made it more difficult or inconvenient for plaintiff to practice his religion, such action did not substantially burden his religious activity.") Certainly, because of the defendants' actions, the plaintiff does not allege he has been required to act contrary to his religious beliefs. Moreover, alternate means for exercising his religion remained available to the plaintiff.

Even had the plaintiff met his initial burden, the defendants have established a rational connection between the challenged policy and a legitimate and neutral governmental interest and has demonstrated that any burden imposed on the plaintiff furthered a compelling

10

governmental interest in prison security and did so by the least restrictive means.  Under these circumstances, the court must accord due deference to the experience and expertise of jail administrators.  *Wilkinson v. Cutter*, 544 U.S. 709, 716 (2005).  Accordingly, based on the foregoing, the defendants are entitled to summary judgment on the plaintiff's RLUIPA claims.

## Qualified Immunity

The defendants also contend they are entitled to qualified immunity on the plaintiff's claims.[4]  "It is important at the outset to remember that the question of qualified immunity is not the question whether a constitutional right has been violated."  *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990)(Phillips, J., concurring).  State officials receive qualified immunity against suits for damages if a reasonable officer facing the same situation would not have known that his actions violated plaintiff's clearly established constitutional or statutory rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  A right is clearly established when the Supreme Court, the appropriate court of appeals, or the highest court of the state has addressed the issue. *Wilson v. Lane*, 141 F.3d 111, 114 (4th Cir. 1998)(en banc). On the other hand, qualified

---

[4]The Court notes that there is the threshold issue of whether the plaintiff can recover damages against the defendants for his RLUIPA claims as the RLUIPA provides only for "appropriate relief against a government." 42 U.S.C. § 2000cc-2a. In *Smith v. Haley*, 401 F.Supp.2d 1240, 1246 (M.D.Ala. 2005), the court noted that this threshold issue in determining whether defendant prison officials were entitled to qualified immunity on an inmate's RLUIPA claim was whether the RLUIPA even authorized claims for damages against state officials in their individual capacities. Recently, in *Lovelace v. Lee*, 472 F.3d 174, 196 n. 7 (4th Cir. 2006), the court, after noting the split among other jurisdictions, specifically left the issue open where the parties had not raised the issue. In *Smith*, because the parties had not briefed the issue, the court assumed  that such damages were available and found the defendants entitled to qualified immunity. *Id.* at 1246, 1250; *see also Farrow v. Stanley*, 2005 WL 2671541, at *11 n. 13 (D.N.H. Oct. 20, 2005) (noting "substantial uncertainty . . . as to whether [RLUIPA] even provides a right to money damages" but explicitly declining to address the issue because the parties had not briefed it).  Likewise, here, the Court will assume money damages are available and address the qualified immunity issue as the parties have not briefed the underlying issue.

immunity applies if an official's challenged conduct was objectively reasonable in light of legal rules that were in force at the time of his actions. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

The "proper focus for courts is not upon the right at its most general or abstract level, but upon its application to the particular conduct being challenged." *Collinson*, 895 F.2d at 998. Therefore, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). As the Court has concluded above, the defendants did not violate the plaintiff's rights and the plaintiff has not pointed to any case law supporting his claims. Accordingly, a reasonable official in the defendants' positions would not have known that denying the plaintiff's request to hold group prayer or access to a bathroom during weekly congregational prayers violated clearly established law under either RLUIPA or the First Amendment. Therefore, the defendants are also entitled to qualified immunity.

## State Law Claims

To the extent that the plaintiff states additional claims under state law (see Compl. At 5), the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).[5]

---

[5]Alternatively, since the SCFRA is essentially identical to the RLUIPA and the Court recommends the defendants be granted summary judgment on the plaintiff's RLUIPA claims, the Court also recommends the defendants be granted summary judgment on the plaintiff's SCFRA claims.

## CONCLUSION

Wherefore, based upon the foregoing, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (# 13) be GRANTED and the Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

_____
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

June 15, 2007
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).